# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### Raleigh Division
#### Case No.  5:26-cv-00375

| | | |
|---|---|---|
| BANILLA GAMES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES EDWARD HARRIS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| and | ) | |
| | ) | |
| CHASE EDWARD HARRIS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Banilla Games, Inc. ("**Banilla**" or "**Plaintiff**"), by counsel, states the following as its Complaint against Defendants, Charles Edward Harris ("**Charles Harris**") and Chase Edward Harris ("**Chase Harris**" and together with Charles Harris, "**Defendants**").

## NATURE OF THE CASE

1.      Over the last decade, Banilla has firmly established itself as a prominent leader in the skill-based gaming and amusement industry. Banilla is widely recognized for its innovation and commitment to quality, attributes that have earned the company a strong reputation among distributors, route operators, players, and industry participants alike. Banilla markets its flagship suite of video gaming systems under the "FUSION" brand ("**FUSION Games**"). Banilla has invested substantial time, effort, and resources in developing and protecting its brand and intellectual property, including the FUSION Games, and is committed to safeguarding these valuable assets.

2. This is a civil action arising from Defendants' willful and deliberate infringement of Banilla's intellectual property rights, including, but not limited to, its exclusive rights in and to the FUSION brand of video gaming systems. Defendants have engaged in the unauthorized use, reproduction, and distribution of counterfeit versions of Banilla's products and exploitation of the following trademarks owned by Banilla (collectively, the "**Banilla Marks**"):

    a.    the North Carolina registered FUSION trademark (the "**FUSION Mark**");

    b.    the federally registered BANILLA GAMES trademark (the "**BANILLA GAMES Mark**");

    c.    the federally registered PLUNDERIN' PIRATES trademark and PLUNDERIN' PIRATES stylized trademark (the "**PLUNDERIN' PIRATES Marks**");

    d.    the federally registered OFFSHORE ANGLER trademark (the "**OFFSHORE ANGLER Mark**");

    e.    the federally registered TERROR TAVERN trademark (the "**TERROR TAVERN Mark**"); and

    f.    the federally registered GORGON TREASURES OF GREECE trademark (the "**GORGON TREASURES OF GREECE Mark**").

Defendants' conduct violates Banilla's exclusive rights in the Banilla Marks.

3. Banilla asserts claims for trademark counterfeiting and infringement under Section 32(1) of the Lanham Act,[1] 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related claims of unfair

---

[1] Hereinafter, the term "Lanham Act" refers to 15 U.S.C. §§ 1051 *et seq*.

competition and trademark infringement under the statutory and common law of the State of North Carolina.

4. The Banilla Marks, which are inherently distinctive and have acquired substantial secondary meaning in the marketplace, signify to consumers the high quality and origin of Banilla's products in the various nudge, skill, redemption, and amusement game markets, are valid, protectable, and enforceable under federal and state law.

5. Banilla brings claims for copyright infringement pursuant to the United States Copyright Act of 1976, as amended (the "**Copyright Act**"), 17 U.S.C. § 101 *et seq*. These claims arise from Defendants' purchase, offer for sale, distribution, marketing, public display, and commercial exploitation of counterfeit FUSION Games, which reproduce, copy, and are substantially similar to—and therefore, infringe—Banilla's copyrighted works. Banilla seeks all remedies available under the Copyright Act, including, but not limited to, preliminary and permanent injunctive relief, recovery of Banilla's actual damages and Defendants' profits attributable to the infringing conduct or statutory damages, and such other monetary and equitable relief as the Court deems just and proper.

6. Banilla's copyrights registrations are valid, subsisting, and enforceable.

7. These intellectual property assets embody the substantial goodwill and reputation that Banilla has developed over many years through continuous use in commerce, and they belong exclusively to Banilla.

## THE PARTIES

8. Banilla is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business in Greenville, Pitt County, North Carolina. Banilla creates, designs, develops, and manufactures software, artwork, and audiovisual effects for

3

various electronic games in various markets, including, but not limited to, the skill-based redemption market.

9. Defendant, Charles Edward Harris, is an individual and, upon information and belief, a resident of North Carolina with his principal address at 3913 Jonesville Road, Wake Forest, North Carolina 27571. Charles Harris is, among other things, engaged in the ownership, sale, and distribution of counterfeit products purporting to be genuine Banilla products. These counterfeit products infringe upon Banilla's intellectual property rights and Charles Harris has profited from the unauthorized use of Banilla's trademarked and copyrighted material, as more fully described herein.

10. Defendant, Chase Edward Harris, is an individual and, upon information and belief, a resident of North Carolina with his principal address at 3913 Jonesville Road, Wake Forest, North Carolina 27571. Chase Harris is, among other things, engaged in the ownership, sale, and distribution of counterfeit products purporting to be genuine Banilla products. These counterfeit products infringe upon Banilla's intellectual property rights and Chase Harris has profited from the unauthorized use of Banilla's trademarked and copyrighted, as more fully described herein.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over the claims in this action that arise under the Lanham Act and Copyright Act pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

12. This Court has supplemental jurisdiction over Banilla's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.

4

13.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as Banilla and Defendants are citizens of different states and the claims asserted herein exceed $75,000.00.

14.     This Court has personal jurisdiction over Defendants because, on information and belief, Defendants reside in North Carolina and in this district, have operated, distributed, or placed infringing products within this State and this district and have otherwise established contacts within this State and this district sufficient to permit the exercise of general and specific jurisdiction.

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Banilla's claims occurred in this district, and under the provision of 28 U.S.C. § 1400(a) because Defendants reside in this district.

<b><u>FACTUAL ALLEGATIONS</u></b>

**I.      BANILLA'S BUSINESS AND INTELLECTUAL PROPERTY**

16.     Since 2013, Banilla has invested millions of dollars in the development of its high-quality and reliable electronic games of skill. Multiple teams of dedicated in-house personnel, acting within the scope of their employment, develop, from scratch, all design and software components of the FUSION Games. These components include, but are not limited to, the games' source code, object code, two-dimensional and other artwork, static images, and other visual and audiovisual effects that contribute to the distinctive and enjoyable user experience of the FUSION Games. All the artwork, static images, and audiovisual effects in the FUSION Games are original—i.e., created by the in-house game design teams—and none of that artwork, static images, and audiovisual effects are copied from any third-party source in the creation of these products.

5

17. Banilla manufactures and distributes a variety of skill-game and amusement devices, including the FUSION-branded devices, which are currently in their sixth iteration.

18. Banilla serves as the exclusive distributor of the FUSION Games. Through Banilla's distribution efforts, the FUSION Games, including the Copyrighted Works (as defined below), are made available to customers, who in turn, place the FUSION Games in their respective places of business.

19. To obtain the FUSION Games, including the Copyrighted Works (as defined below), an individual or business must purchase the FUSION Games directly from Banilla or from an authorized reseller to whom Banilla has sold legitimate FUSION Games. No other channel of distribution is authorized by Banilla.

20. Banilla has invested substantial time, effort, and resources in developing, marketing, and distributing the FUSION Games to its customers and providing exemplary customer service to those customers who purchase legitimate copies of the FUSION Games.

21. Banilla's FUSION Games are highly regarded by Banilla's customers (e.g., the operators who purchase the games) and end users (e.g., the individuals who play the games), all of whom have come to associate the FUSION Games and the Banilla Marks with high-quality products and superior customer service from Banilla.

22. Banilla continues to invest heavily in the development and protection of its intellectual property and has consistently and vigorously protected and enforced those rights.

23. In furtherance of its brand-building efforts, Banilla has used the BANILLA GAMES Mark in commerce throughout the United States continuously since at least February 6, 2014. The BANILLA GAMES Mark has been used in connection with the manufacture,

6

distribution, offering for sale, sale, marketing, advertising, and promotion of products in the board, nudge, skill, redemption, and amusement game markets.

24. Banilla is the owner of the intellectual property rights in the software for the FUSION Games, which consists of a series of game suites. These intellectual property rights include multiple federal copyright registrations issued by the United States Copyright Office for the computer files and associated audiovisual effects used in the FUSION line of video games, including, but not limited to, the following:

- Number PA0002206908, obtained on October 11, 2019, for Banilla's FUSION video game (the "**Fusion Copyrighted Work**").

- Number PA0002218349, obtained on October 11, 2019, for Banilla's FUSION 2 video game (the "**Fusion 2 Copyrighted Work**").

- Number PA0002218347, obtained on October 11, 2019, for Banilla's FUSION 3 video game (the "**Fusion 3 Copyrighted Work**").

- Number PA0002293309, obtained on May 24, 2021, for Banilla's FUSION 4 video game (the "**Fusion 4 Copyrighted Work**").[2]

- Number PAu004088597, obtained on May 24, 2021, for Banilla's FUSION 5 video game (the "**Fusion 5 Copyrighted Work**").[3]

- Number PA0002559762, obtained on September 22, 2025, for Banilla's FUSION 6 video game (the "**Fusion 6 Copyrighted Work**").[4]

---

[2] Attached hereto as **Exhibit 2**.
[3] Attached hereto as **Exhibit 3**.
[4] Attached hereto as **Exhibit 4**.

- Number PA0002368424, obtained on July 19, 2022, for Banilla's FUSION Link video game (the "**Fusion Link Copyrighted Work**").[5]

Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles, including, as relevant here, the game title "Plunderin' Pirates," Number PA0002533777, obtained on March 19, 2025 (the "**Plunderin' Pirates Copyrighted Work**"),[6] the game title "Terror Tavern," Number PA0002551216, obtained on June 13, 2025 (the "**Terror Tavern Copyrighted Work**"),[7] the game title "Offshore Angler," Number PA0002537346, obtained on March 27, 2025 (the "**Offshore Angler Copyrighted Work**"),[8] the game title "Topshot Golf," Number PA0002551916, obtained on June 26, 2025 (the "**Topshot Golf Copyrighted Work**"),[9] and the game title "Gorgon: Treasures of Greece," Number PA0002551204, obtained on June 13, 2025 (the "**Gorgon Copyrighted Work**").[10] Hereinafter, the above copyright works will be referred to collectively as the "**Copyrighted Works**."[11]

25.     In addition, Banilla has continuously used the trademark "FUSION" in commerce throughout the United States, and in North Carolina, since at least as early as February 2017, in connection with the creation, distribution, offering for sale, sale, marketing, and promotion of its

---

[5] Attached hereto as **Exhibit 5**.
[6] Attached hereto as **Exhibit 6**.
[7] Attached hereto as **Exhibit 7**.
[8] Attached hereto as **Exhibit 8**.
[9] Attached hereto as **Exhibit 9**.
[10] Attached hereto as **Exhibit 10**.
[11] Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles including, but not limited to: the game title "Crumble Cave," Number VA0002173744, obtained on October 11, 2019 (the "**Crumble Cave Copyrighted Work**"), the game title "Bourbon Street Dice," Number VA0002184888, obtained on October 11, 2019 (the "**Bourbon Street Dice Copyrighted Work**"), the game title "Ticket to Ride," Number VA0002184964, obtained on October 11, 2019 (the "**Ticket to Ride Copyrighted Work**"), and the game title "Vegas Magic," Number VA0002184972, obtained on October 11, 2019 (the "**Vegas Magic Copyrighted Work**"). Hereinafter, the copyright registrations for these game titles will be referred to collectively as the "**Copyrighted Games**."

8

FUSION Games, including the Copyrighted Works at issue in this action. Attached hereto as **Exhibit 1** are representative samples of materials evidencing Banilla's use of the FUSION Mark in connection with the FUSION Games.

26. Banilla obtained a state registered trademark for "FUSION" (the "**FUSION Mark**") and is the owner of North Carolina Trademark Registration T-24749 for the FUSION Mark in connection with "recorded computer software for playing games of skill" and "recorded computer application software for video gaming consoles and video gaming machines for playing games of skill," which is in full force and effect. The North Carolina Certificate of Registration is attached as **Exhibit 11**.

27. Since their introduction, the FUSION Games have become among the most popular and widely recognized skill games available in the United States, enjoying widespread recognition and use by players, locations, route operators, and resellers. *See, e.g.,* https://banillagames.com/product-category/platforms/skill-games/fusion-series/; *see also* https://banillagames.com/product-category/platforms/skill-games/fusion-link/. As a result of Banilla's longstanding and continuous use of the FUSION Mark, and the consistently high quality of its goods and services offered thereunder, the FUSION Mark has acquired secondary meaning and become widely known throughout the United States, including in North Carolina. The FUSION Mark is closely and exclusively identified with Banilla and represents substantial and valuable goodwill belonging to Banilla.

28. By virtue of its widespread, continuous, and exclusive use of the FUSION Mark to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify Banilla as the single source of origin of those products, Banilla owns valid, protectable, and subsisting statutory and common law rights in and to the FUSION Mark.

29. Banilla is the owner of the following valid and subsisting United States Trademark Registrations on the Principal Register of the United States Patent and Trademark Office ("**USPTO**"):

    a.     "BANILLA GAMES," Registration No. 7,187,484, which registration issued on October 10, 2023, as shown in **Exhibit 12**.

    b.     "PLUNDERIN' PIRATES," Registration No. 8,095,915, which registration issued on January 6, 2026, as shown in **Exhibit 13**.

    c.     "PLUNDERIN' PIRATES (stylized)," Registration No. 8,202,393, which registration issued on April 7, 2026, as shown in **Exhibit 14**.

    d.     "TERROR TAVERN," Registration No. 7,994,942, which registration issued on October 21, 2025, as shown in **Exhibit 15**.

    e.     "OFFSHORE ANGLER," Registration No. 8,174,554, which registration issued on March 17, 2026, as shown in **Exhibit 16**.

    f.     "GORGON TREASURES OF GREECE," Registration No. 8,174,555, which registration issued on March 17, 2026, as shown in **Exhibit 17**.

30. Banilla has used the BANILLA GAMES Mark in commerce throughout the United States, including North Carolina, continuously since at least as early as February 16, 2014, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets. The registration for the BANILLA GAMES Mark covers the following goods and services:

> Recorded computer software for playing games of chance relating to games, card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [r]ecorded computer application software for video gaming consoles and video gaming machines

10

for playing games of chance relating to games, card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [r]ecorded computer software for enabling social gaming by uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information regarding electronic gaming, entertainment, and general gaming interest via the Internet or other communications networks with third parties; [v]ideo gaming consoles for playing card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [v]ideo gaming machines for playing computer games; [i]nstallation, maintenance, modification, and updating of electronic gaming and gambling systems being game machines and hardware; [p]roviding an internet site featuring news and information in the field of gaming; [e]ntertainment services, namely, providing online games of chance and social games being computer games; [e]ntertainment services, namely, conducting casino gaming contests and tournaments.

31.     Banilla has used the PLUNDERIN' PIRATES Marks in commerce throughout the United States, including North Carolina, continuously since at least as early as August 16, 2019, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

32.     Banilla has used the TERROR TAVERN Mark in commerce throughout the United States, including North Carolina, continuously since at least as early as May 18, 2021, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

33.     Banilla has used the OFFSHORE ANGLER Mark in commerce throughout the United States, including North Carolina, continuously since at least as early as May 18, 2021, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

11

34. Banilla has used the GORGON TREASURES OF GREECE Mark in commerce throughout the United States, including North Carolina, continuously since at least as early as July 13, 2023, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

35. As a result of the widespread, continuous, and exclusive use of the Banilla Marks in commerce to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify Banilla as the source of those products, Banilla owns valid and subsisting federal statutory and common law rights in the Banilla Marks.

36. Banilla has made significant expenditures in promoting and marketing goods and services provided under the Banilla Marks. As a result of Banilla's exclusive use and promotion of the Banilla Marks in connection with its goods and services, Banilla has developed and now owns substantial and valuable goodwill symbolized by the Banilla Marks.

37. As a direct result of these efforts, the goodwill and recognition that Banilla has established have enabled Banilla to achieve substantial sales of its products in the board, nudge, skill, redemption, and amusement game markets under the Banilla Marks throughout the United States.

38. The Banilla Marks are distinctive and have acquired strong secondary meaning among both the consuming public and the relevant trade, including participants in the skill-based redemption game market.

39. As a result of its significant investment in the promotion and marketing of the FUSION Games, Banilla has become recognized as a global leader in the electronic gaming industry. As a global leader, Banilla diligently protects its business and products through

12

comprehensive intellectual property enforcement measures, including the registration of copyrightable works, registration of trademarks and service marks, protection of trade secrets, and other measures designed to safeguard its intellectual property rights. As a result of these efforts, Banilla has developed and owns substantial and valuable good will associated with the Banilla Marks.

**II.     DEFENDANTS' COUNTERFEITING AND INFRINGING ACTIVITIES**

*Copyright Infringement*

40.     Banilla is the exclusive distributor of the FUSION Games. Banilla sells FUSION Games to end users, who, in turn, use them in their places of business.

41.     On or about April 8, 2026, Banilla learned through its own due diligence that Defendants owned, publicly displayed, and offered for sale at least five (5) counterfeit, pirated, or hacked versions of the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work, and allowed such counterfeit and unauthorized games to be used by his customers and purchasers (i.e., end users).

42.     After learning of Chase Harris' Facebook Marketplace listings, Banilla exercised reasonable diligence to investigate and verify that Defendants' misconduct was occurring and continuing.

43.     After learning of Defendants' actions, on April 24, 2026, Banilla caused a cease and desist letter to be sent to Defendant Chase Edwards (the "**Cease and Desist Letter**"). The Cease and Desist Letter demanded, among other things, that Defendants immediately cease selling

counterfeit Banilla products and turn over all counterfeit Banilla products in their possession, custody, or control.

44. Defendants, despite actual receipt of the Cease and Desist Letter, and being fully aware of the demands contained therein, have willfully ignored Banilla's demands and continue to offer counterfeit products for sale that infringe on the Copyrighted Works and Copyrighted Games.

45. In fact, Defendants have since changed their name on Facebook Marketplace to "Joshua Morris," but continue to offer counterfeit products for sale that infringe on the Copyrighted Works and Copyrighted Games.

46. Upon information and belief, Defendants purchased, sold, distributed, publicly displayed and/or otherwise exploited all the unauthorized, pirated, and/or hacked versions of the Copyrighted Works and Copyrighted Games on the secondary market (the "**Illicit Games**"). Neither the cabinets in which the Illicit Games were housed, if any, nor the Illicit Games therein were created, sold, or authorized or licensed by Banilla. Upon information and belief, Defendants have purchased, sold, and/or vended additional Illicit Games, or have the means, motive, and capability to obtain, distribute, and exploit additional Illicit Games.

47. Banilla's private investigator communicated with Defendant Chase Harris through Facebook Messenger and via Facetime regarding the unauthorized, pirated, and/or hacked versions of the Copyrighted Works. Upon information and belief, Defendants have continued to offer for sale and/or vended additional Illicit Games or have the means, motive, and opportunity to obtain, distribute, and exploit additional Illicit Games on the secondary market through Chase Harris' Facebook Marketplace account, including cabinets and boards that have not been created, sold, authorized, or licensed by Banilla. For example:

14

Edward sent 7 photos





Edward · WE SELL SKILL GAMES

I have more one second

Edward

My warehouse is in Raleigh

↰ Edward replied to you

And then with this steel cabinet?

I apologise these are sold, but I do have cabinets like this that I can put games in

**You can now rate each other**
People may rate one another based on their
interactions or transactions.

**Rate Edward**

↰ Edward replied to you

What's your price on this this with printer and bill accepted?

2000

Edward

If it were to be in a metal cabinet, it would be around $3500 - $4500 depending on on the game

Edward

Okay, one second

4500 for fusion 5 and $5000 for fusion 6

Metal is getting expensive

Edward

I can send you better pictures of them when I go to my unit

If you'd like



48. The hacked/pirated/counterfeit Illicit Games are sold for significantly less than genuine products. A genuine game board for the Fusion 5 Game, for example, costs $4,995.00 and a full game board and cabinet costs approximately $10,000.00. Upon information and belief, Defendants paid significantly less for the Illicit Games and are offering the Illicit Games for sale at a price of $4,500.00 and $5,000.00 for a brand-new game board and cabinet.

49. This model allows Defendants to undercut Banilla's market share, divert Banilla's profits, and increase Defendants' own profits at Banilla's expense. By purchasing Illicit Games at a substantially lower price, Defendants can maximize their profits by receiving a larger portion of

16

gross revenue, and ultimately secure locations that would otherwise use Banilla's legitimate machines.

50. Defendants' Illicit Games are nearly identical to the Copyrighted Works and Copyrighted Games, in that they present the same game play and almost identical artwork. However, the Illicit Games perform at slower speeds than the Copyrighted Works, and the Illicit Games display dimmer, lower-quality artwork than that found in the Copyrighted Works. Additionally, the game board that runs the Illicit Games is designed in a completely different manner from Banilla's genuine game boards.

51. Banilla owns all right, title, and interest in and to the copyrights covering the audiovisual effects that tie together the artwork used in the Copyrighted Works, and in this instance, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, and the Fusion Link Copyrighted Work, which effects depict a series of related images that, when shown in a sequence, impart an impression of motion and the expression fixed in motion.

52. In addition, Banilla owns all right, title, and interest in and to the copyrights covering the individual game title "Plunderin' Pirates" that is incorporated into the Fusion 4 Copyrighted Work. Banilla also owns all right, title, and interest in and to the copyrights covering the individual game titles "Terror Tavern," "Offshore Angler," and "Topshot Golf" that are incorporated in the Fusion 5 Copyrighted Work and the individual game title "Gorgon: Treasures of Greece" that is incorporated into the Fusion 6 Copyrighted Work. Similarly, Banilla also owns all right, title, and interest in and to the copyrights covering the individual game titles "Gorgon: Treasures of Greece" and "Offshore Angler" that are incorporated into the Fusion + Game, respectively.

53. The Copyrighted Works are wholly original works of authorship, and Banilla is the sole and exclusive owner of all right, title, and interest in and to the Copyrighted Works and the owner of all the exclusive rights associated with those Copyrighted Works, including, but not limited to, the right to reproduce its software in copies and to distribute those copies to the public. Additionally, 17 U.S.C. § 106(5) provides Banilla, as copyright holder for "motion picture or other audiovisual works," the exclusive right to display the work publicly.

54. Without Banilla's authorization, consent, or knowledge, and without any compensation to Banilla, Defendants have published and publicly displayed unauthorized, unlicensed, and counterfeit reproductions of the Copyrighted Works. Specifically, Defendants have published and publicly displayed unauthorized, unlicensed, and counterfeit versions of the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, and the Fusion Link Copyrighted Work, and unauthorized, unlicensed, and counterfeit versions of the individual game titles: the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work.

55. Defendants are marketing, distributing, and offering for sale the Illicit Games across the country, in an effort to replicate, or copy, the market footprint Banilla has spent years, and millions of dollars, developing.

*Trademark Infringement*

56. Banilla also owns the BANILLA GAMES Mark, which appears at the start-up of each FUSION Game, and which are distinctive, arbitrary and fanciful, and entitled to the broadest scope of protection.

57. Without authorization from Banilla, Defendants have used, likely among others, the Banilla Marks, or counterfeit and unauthorized imitations thereof that are confusingly similar to consumers and end users (the "**Infringing Marks**"), in commerce within the United States, in connection with the marketing, distribution, and operation of the Illicit Games.

58. Defendants' Illicit Games are marketed as, among other types, skill games, and distributed in skill game markets, just as Banilla markets and distributes. Indeed, the target market for both Banilla's products and services and Defendants' products and services are identical, namely distributors and route operators, who will then make such games available to end users who play the games.

59. Defendants, despite actual receipt of the Cease and Desist Letter, and being fully aware of the demands contained therein, have willfully ignored Banilla's demands and continue to offer counterfeit products for sale that infringe on the Banilla Marks.

60. Defendants' infringing acts, as alleged herein, have caused and are continuing to cause confusion, mistake, and deception among the relevant consuming public as to the source of origin of Defendants' game boards and have and are continuing to deceive the relevant consuming public into believing, mistakenly, that Defendants' game boards originate from, are associated or affiliated with, or otherwise authorized by Banilla.

61. Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and to its valuable reputation and goodwill with the consuming public for which Banilla has no adequate remedy at law.

62. Defendants' Illicit Games are confusingly similar to authentic FUSION Games sold and distributed by Banilla, differing primarily in the speed of game play, the quality of the displayed artwork, and the internal design of the game board.

19

63. Each time an Illicit Game is placed, publicly displayed, or put into operation, and each time such a machine is started, Defendants employ the Infringing Marks.

64. Defendants' infringing actions, as alleged herein, have caused, or are likely to cause, confusion, mistake, and deception among the relevant consuming public (e.g., consumers and end users) as to the source, sponsorship, or affiliation of the Illicit Games, falsely suggesting an association with or endorsement by Banilla and deceiving the relevant consuming public into believing, mistakenly, that the Illicit Games originate from, are associated or affiliated with, or otherwise authorized by Banilla. The prominent uses of FUSION Games are made with the intent to trade on the goodwill associated with the Banilla Marks.

65. Defendants' uses create the false impression that their goods and services originate from Banilla, or that Banilla is somewhat connected or associated with, or sponsors, Defendants' goods and services, so as to deceive customers or to cause confusion or mistake as to the origin or affiliation of Defendants' and Banilla's goods and services.

66. Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and to its valuable reputation and goodwill with the consuming public for which Banilla has no adequate remedy at law.

*Damages from Copyright and Trademark Infringement*

67. As a result of Defendants' actions, Banilla has been damaged, and continues to be damaged, by the unauthorized publication and public display of counterfeit versions of the Copyrighted Works, including, but not limited to, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work.

20

Furthermore, Banilla has been damaged, and continues to be damaged by Defendants' unauthorized use of the Infringing Marks.

68.     Defendants have never accounted to or otherwise paid Banilla for their improper, illegal, and unauthorized use of counterfeit versions of the Copyrighted Works or the Banilla Marks.

69.     Defendants' acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

70.     Defendants' infringement has been and continues to be willful, intentional, and with reckless disregard for Banilla's rights, entitling Banilla to enhanced damages.

71.     Defendants' acts have caused, and will continue to cause, Banilla to lose profits.

72.     Consumers likely will associate Defendants' Illicit Games with Banilla because, *inter alia*, Defendants' Illicit Games mimic in every way the experience provided by the FUSION Games.

73.     Defendants have engaged in an unfair method of competition and unfair trade practice. In fact, Defendants are intentionally "palming off" their Illicit Games as if they were authentic, or otherwise authorized, Banilla products in order to create consumer confusion, while capitalizing from Banilla's stellar reputation for quality products and service.

74.     Defendants' acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

75.     Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on Banilla's goodwill, cause confusion and deception in the marketplace, and divert potential sales of Banilla's authentic FUSION Games to Defendants.

**Copyright Infringement Pursuant to 17 U.S.C. §§ 106, 501**

76. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

77. The Copyrighted Works and the incorporated Copyrighted Games, namely the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work, are motion picture/audiovisual effects containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

78. Banilla is the exclusive owner of all exclusive rights under copyright in the Copyrighted Works. Banilla owns valid copyright registrations, issued by the United States Copyright Office, for the Copyrighted Works, specifically the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work. *See* **Exhibits 2-10**.

79. Multiple teams of dedicated in-house personnel, acting within the scope of their employment, created the Copyrighted Works. None of these employees have any contractual rights to ownership of the Copyrighted Works and, as such, the Copyrighted Works constitute works made for hire.

80. Banilla is the owner of all rights, title, and interest in and to the asserted copyrights underlying the Copyrighted Works.

81. The Copyrighted Works were registered within five (5) years of the first publication of the Copyrighted Works.

82. By making the Illicit Games available for use by end users, Defendants have publicly displayed and published pirated, hacked, and/or counterfeit copies of, likely among others, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work, and have done so without Banilla's permission.

83. As a direct and proximate result of Defendants' infringement of Banilla's Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work, and pursuant to 17 U.S.C. § 503(a), this Court "may order the impounding . . . (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner; . . . (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court."

84. As a direct and proximate result of Defendants' infringement of Banilla's copyrights, Banilla is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c)(1), in an amount of up to $30,000.00, or up to $150,000.00 for a willful infringement, per copyright violation, with respect to Defendants' infringing use of the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work, or such other amount as may be appropriate under 17 U.S.C. § 504(c). Alternatively, at Banilla's

23

election, pursuant to 17 U.S.C. § 504(b), Banilla shall be entitled to its actual damages, including Defendants' profits from the infringements, as will be proven at trial.

85.     Banilla is entitled to an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 for Defendants' willful infringement.

86.     In all events, Defendants' acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law. Banilla is thus entitled to impoundment of the Illicit Games, preliminary injunction, and permanent injunction.

**COUNT II**
**Federal Trademark Infringement**
**Pursuant to 15 U.S.C. § 1114**

87.     Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

88.     Banilla owns the U.S. trademark registrations for the BANILLA GAMES, PLUNDERIN' PIRATES, PLUNDERIN' PIRATES (stylized), OFFSHORE ANGLER, TERROR TAVERN, and GORGON TREASURES OF GREECE Trademarks listed in **Exhibits 12-17**.

89.     Defendants' unauthorized use in commerce of the Banilla Marks to promote the sale of goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Game(s)) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendants' goods by creating the false and misleading impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendants are in some way affiliated with or sponsored by Banilla.

90.     Defendants' use of the Banilla Marks violates 15 U.S.C. § 1114, and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of

confusion and deception of members of the trade and public and, additionally, injury to Banilla's goodwill and reputation as symbolized by the Banilla Marks, for which Banilla has no adequate remedy at law.

91. Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intend to cause confusion and trade on Banilla's goodwill.

92. Defendants have caused, and are likely to continue causing, substantial injury to the public and to Banilla, and Banilla is entitled to injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorney's fees and costs of this action under 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT III**
**Unfair Methods of Competition Pursuant to 15 U.S.C. § 1125(a)(1)(A)**

93. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

94. Banilla owns the U.S. trademark registrations for the BANILLA GAMES, PLUNDERIN' PIRATES, PLUNDERIN' PIRATES (stylized), OFFSHORE ANGLER, TERROR TAVERN, and GORGON TREASURES OF GREECE Trademarks listed in **Exhibits 12-17**.

95. Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

96. Defendants' unauthorized use in commerce of the Banilla Marks to promote the sale of goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Game(s)) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendants' goods by creating the false and misleading

25

impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendants are in some way affiliated with or sponsored by Banilla.

97. Defendants' unauthorized use in commerce of the Banilla Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

98. Upon information and belief, Defendants have committed the foregoing acts with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Banilla.

99. Defendants' conduct as alleged herein constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

100. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

101. Banilla is entitled to, among other relief injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1116 and 1117, as well as pre- and post-judgment interest.

## COUNT IV
### False Designation of Origin Pursuant to 15 U.S.C. § 1125(a)(1)(B)

102. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

103. Banilla owns the U.S. trademark registrations for the BANILLA GAMES, PLUNDERIN' PIRATES, PLUNDERIN' PIRATES (stylized), OFFSHORE ANGLER, TERROR TAVERN, and GORGON TREASURES OF GREECE Trademarks listed in **Exhibits 12-17**.

104. Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

105. Defendants' unauthorized use in commerce of the Banilla Marks and/or confusingly similar variations thereof to promote the sale of goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Game(s)) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendants' goods by creating the false and misleading impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendants are in some way affiliated with or sponsored by Banilla.

106. Defendants' unauthorized use in commerce of the Banilla Marks and/or confusingly similar variations thereof as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

107. Upon information and belief, Defendants have committed the foregoing acts with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Banilla.

108. Defendants' conduct as alleged herein constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(B).

109. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla

and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

110. Banilla is entitled to, among other relief injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1116 and 1117, as well as pre- and post-judgment interest.

**COUNT V**
**N.C. Gen. Stat. § 75-1.1**

111. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

112. Defendants' actions in passing off their Illicit Games as those authorized, created, licensed, sold, and/or distributed by Banilla are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Illicit Games, thereby causing harm to the reputation and goodwill of Banilla.

113. Defendants' unfair or deceptive acts or practices were in or affecting commerce, as that term is defined under N.C. Gen. Stat. § 75-1.1.

114. Defendants' unfair or deceptive acts or practices proximately caused Banilla to suffer a loss.

115. Defendants have profited and been unjustly enriched by revenue from the Illicit Game(s) that Defendants would not otherwise have made but for their unlawful conduct.

116. Pursuant to N.C. Gen. Stat. § 80-12, Defendants' violation of N.C. Gen. Stat. § 80-11 constitutes a *per se* violation of § 75-1.1.

117. Banilla has been damaged by Defendants' passing off and unfair or deceptive acts or practices.

28

118. Banilla is entitled to have any recovery from Defendants trebled under N.C. Gen. Stat. § 75-16.

119. In all events, Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Banilla for which Banilla has no adequate remedy at law. Banilla is thus entitled to an injunction.

120. As a result of Defendants' passing off and unfair trade practices, Banilla is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, and treble damages under N.C. Gen. Stat. §§ 80-11, 80-12. 75-1.1, and 75-16.

**COUNT VI**
**North Carolina Statutory and Common Law Trademark Infringement**

121. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

122. This claim is for statutory and common law trademark infringement against Defendants based on their sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games bearing the FUSION Mark, which activities violate the North Carolina Trademark Registration Act, N.C. Gen. Stat. § 80-1 *et seq.* and are actionable under N.C. Gen. Stat. § 80-11.

123. Banilla holds a state registered trademark for the FUSION Mark and is the owner of North Carolina Trademark Registration T-24749 for the FUSION Mark in connection with "recorded computer software for playing games of skill" and "recorded computer application software for video gaming consoles and video gaming machines for playing games of skill," which is in full force and effect.

124. Defendants, without authority, have used and are continuing to use the unauthorized use of the FUSION Mark, and counterfeit imitations thereof, in connection with the sale, offering

for sale, use, placement, marketing, and/or public display of the Illicit Games, thereby inducing Defendants' customers and/or clients, and others, to believe, contrary to fact, that the Illicit Games placed/sold by Defendants emanate or originate from Banilla, or that Banilla has approved, permitted, licensed, or otherwise associated itself with Defendants and their Illicit Games. Defendants' acts have damaged and impaired the goodwill symbolized by the FUSION Mark, to Banilla's immediate and irreparable damage.

125. Actual and potential consumers, upon encountering Defendants' Illicit Games, are likely to be confused about the source of origin of the Illicit Games and will likely mistakenly believe that Defendants' Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Banilla.

126. Defendants' unauthorized use of the FUSION Mark or a confusingly similar, or counterfeit, variation thereof as alleged herein in connection with the advertising and sale of FUSION Games or Illicit Games is likely to cause confusion, mistake, or deception as to the source of Defendants' Illicit Games and constitutes infringement of the FUSION Mark under the statutory and common law of North Carolina.

127. Defendants have used the FUSION Mark on their Illicit Games that were not manufactured by or authorized by Banilla, and, therefore, Defendants have deliberately attempted to deceive and mislead consumers.

128. Defendants, through their continued and unauthorized use of the FUSION Mark, are unfairly benefiting from and misappropriating Banilla's goodwill and reputation, resulting in serious, substantial, and irreparable injury to Banilla and the public.

129. Defendants' infringement has been and continues to be willful, intentional, and with reckless disregard for Banilla's rights, entitling Banilla to enhanced damages.

30

130.     Banilla is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, and treble damages under N.C. Gen. Stat. §§ 80-11, 80-12. 75-1.1, and 75-16.

WHEREFORE, for the reasons stated above, Plaintiff, Banilla Games, Inc., prays to the Court as follows:

1.     For judgment that Defendants, Charles Edward Harris and Chase Edward Harris:

    (a)     Have violated the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

    (b)     Have violated Section 32(1) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a);

    (c)     Have engaged in unfair competition in violation of the common law of North Carolina and N.C. Gen. Stat. § 75.1-1; and

    (d)     Have engaged in trademark infringement in violation of the common law and the North Carolina Trademark Registration Act, N.C. Gen. Stat. § 80-1, *et seq.*

2.     That an injunction be issued enjoining and restraining Defendants, Charles Edward Harris and Chase Edward Harris, and each of their officers, agents, employees, attorneys, and all those in active concert or participation with them from:

    (a)     Defendants' continued use, publication, and display of the BANILLA GAMES Mark, the PLUNDERIN' PIRATES Mark, the PLUNDERIN' PIRATES (stylized) Mark, the TERROR TAVERN Mark, the OFFSHORE ANGLER Mark, and the GORGON TREASURES OF GREECE Mark;

    (b)     Defendants' continued use, publication, and display of the Copyrighted Works, namely the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted

Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work;

(c)     Defendants' continued deceptive practices, including marketing or passing off the Illicit Games in interstate commerce; and

(d)     Defendants' use of Banilla's trademarks and intellectual property, including the Illicit Games.

3.     For the entry of an order directing Defendants, Charles Edward Harris and Chase Edward Harris, and all other persons, firms, or corporations in active concert or privity or in participation with Defendants, to deliver up to Banilla all products, advertisements, promotional materials, packaging, and other items in their possession or under their control bearing the Copyrighted Works, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, pursuant to 15 U.S.C. § 1118, 17 U.S.C. § 503(b), and N.C. Gen. Stat. § 66-152, *et seq*.

4.     For an assessment of actual damages, plus the amount of Defendants' profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 17 U.S.C. § 504(c) in an amount not less than $1,350,000.00 for Defendants' willful infringement of the Copyrighted Works, namely the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work.

5.     For an assessment of: actual damages, plus the amount of Defendants' profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as

authorized by 15 U.S.C. § 1117(c) in an amount not less than $12,000,000.00 for Defendants' willful infringement of the BANILLA GAMES Mark, the PLUNDERIN' PIRATES Mark, the PLUNDERIN' PIRATES (stylized) Mark, the TERROR TAVERN Mark, the OFFSHORE ANGLER Mark, and the GORGON TREASURES OF GREECE Mark.

6. For an assessment of: (a) damages suffered by Banilla, pursuant to 15 U.S.C. § 1117(a); (b) an award of Banilla's costs and attorneys' fees to the full extent provided for by 15 U.S.C. § 1117 and 17 U.S.C. § 505; and (c) profits, damages, and fees, to the full extent available, pursuant to N.C. Gen. Stat. § 75-16.

7. For a judgment against Defendants in an amount to be determined at trial, but not less than $13,350,000.00 plus interest and costs as allowed by law.

8. For damages awarded to Banilla as allowed by law for Defendants' willful infringements.

9. For costs and reasonable attorneys' fees, as allowed by law.

10. For such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Banilla respectfully demands a trial by jury on all claims and issues so triable.

This 3rd day of June 2026

/s/ *James B. Gatehouse*
James B. Gatehouse
NC State Bar No. 22811
Whiteford, Taylor & Preston LLP
Two Morrocroft Centre
4064 Colony Road, Suite 315
Charlotte, North Carolina 28211
Telephone:     (980) 242-5001
Facsimile:     (980) 242-5019
E-Mail:          jgatehouse@whitefordlaw.com

*Counsel for Plaintiff, Banilla Games, Inc.*